**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **PEXIP, INC.,**<br>Plaintiff,<br>vs.<br>**TELESYNERGY HEALTH SYSTEMS, INC.**<br>Defendant. | Civil Action No. 25-cv-06752 (JPC)<br><br>**ORDER AND CONSENT JUDGMENT** |

Plaintiff, **PEXIP, INC.** d/b/a Pexip (hereinafter referred to as "Pexip, Inc." or "Plaintiff"), upon consultation with its counsel, Peri Stewart Malia, and the Defendant, **TELESYNERGY HEALTH SYSTEMS, INC.** (hereinafter referred to as "Telesynergy Health Systems" or "Defendant"), upon consultation with its counsel, Bushell, Sovak, Kane & Sash LLP, having resolved to settle their dispute by stipulating to the entry of this Consent Judgment, and good cause appearing therefor:

**IT IS ORDERED** as follows:

1. The Court has personal jurisdiction over the parties and subject matter jurisdiction over this action under 28 U.S.C. § 1332 and Section 12 of the License Agreement (as defined hereafter) and venue is appropriate.

2. Pexip, Inc. owns certain proprietary software known as PEX-ENTERPRISE-12. Pexip, Inc. and Telesynergy Health Systems entered into an agreement dated March 31, 2023 to license the Pexip Software (as defined hereafter), a true copy of which agreement is attached hereto as Exhibit "A" (with pricing redacted) and made a part hereof (the "License Agreement"). The license to the Pexip Software (as defined hereafter) expired on June 29, 2024. The license included in the License Agreement is the "Pexip Infinity Enterprise License" which includes all

necessary capacity, virtual meeting room, audio, and scheduling licensing required for customer organization size. The Pexip Infinity is a self-hosted, virtualized, and distributed multipoint video conferencing platform. The Pexip Infinity can be deployed in an organization's own datacenter, or in a private or public cloud such as Microsoft Azure, Amazon Web Services (AWS), Google Cloud Platform (GCP) or Oracle Cloud Infrastructure, as well as in any hybrid combination. It enables scaling of video, voice and data collaboration across organizations, regardless of technology platforms and security requirements, seamlessly allowing everyone to engage in high definition video, web, and audio conferencing (The PEX-Enterprise-12 and the Pexip Infinity Enterprise License as described herein are collectively referred to as the "Pexip Software).

3. Defendant has utilized the Pexip Software, components thereof and developments thereto in certain of its products and/or services but failed to make any payments pursuant to the License Agreement. Defendant acknowledges it is in default under the terms of the License Agreement. Pexip was in compliance with all terms of the License Agreement.

4. Defendant represents that it has ceased utilization of the Pexip Software, any component thereof, and any development(s) thereto or modification(s) based thereon.

5. Defendant acknowledges and agrees that it owes Plaintiff the amount of Two Hundred Fifteen Thousand ($215,000.00 ) Dollars. Defendant consents to the entry of this Order and Consent Judgment in favor of Plaintiff and against Defendant in the principal amount of Two Hundred Fifteen Thousand ($215,000.00) Dollars. Interest shall accrue thereon at the annual interest rate of nine (9%) percent from the date of entry of this Order and Consent Judgment.

6. Defendant, its respective officers, directors, employees, agents, servants, subsidiaries, successors and assigns, attorneys and all persons in active concert or participation with any of

them who receive actual notice of this Order by personal service or otherwise, be and hereby are enjoined from:

(a) manufacturing, producing, distributing, selling, offering for sale, advertising, promoting, marketing or utilizing in any other way using the Pexip Software or any component thereof;

(b) manufacturing, producing, distributing, selling, offering for sale, advertising, promoting, marketing or utilizing in any other way using any software developed from the Pexip Software;

(c) holding themselves out as using or integrating the Pexip Software or any component thereof in any productor services it may develop or offer; and

(d) committing any other acts calculated to cause purchasers or licensees to believe that any of the Defendant's products and/or services are sold under the control and supervision of Plaintiff, or are authorized, guaranteed, or sponsored by, or otherwise associated, or connected with Plaintiff or contain any Pexip Software or development/modification thereof.

7. Except as set forth herein, all other claims and defenses of both parties are otherwise waived or dismissed with prejudice and without costs.

8. In the event of any legal action to enforce or interpret this Order and Judgement, including any appeal therefrom, Telesynergy Health Systems shall pay the reasonable attorneys' fees and other costs and expenses (including expert witness fees) of Pexip, Inc. in such amount as the Court may determine.

9. This Court shall retain jurisdiction to consider any dispute or action to enforce the terms of this Order and Consent Judgment.

The Clerk of Court is respectfully directed to enter judgment and terminate this case.

**SO ORDERED.**

Date: August 17, 2026

Honorable John P. Cronan, U.S.D.J.

**WE HEREBY CONSENT TO THE FORM AND ENTRY OF THIS ORDER:**

**PERI STEWART MALIA**
Counsel for Plaintiff
Pexip, Inc.

By:
Michael T. Stewart (7294)
271 Route 46 West, Suite C201
Fairfield, NJ 07004
Tel. 973-521-7426
E-mail: mstewarvgperistewart.com

**BUSHELL, SOVAK, KANE & SASH LLP**
Counsel for Defendant, Telesynergy Health Systems, Inc.

By: *Alan E. Sash*
Alan E. Sash ( 8804 )
274 Madison Avenue Suite 1401
New York, NY 10016
Tel: (212)949-4700
E-mail:asash@bushellsovak.com

**PEXIP, INC.**

By: *Kellye Hacker*
Kellye Hacker, Controller
Pexip INC.

**TELESYNERGY HEALTH SYSTEMS, INC.**

By:
Anil Srivastava , as President



NWK2: 517580.02

# EXHIBIT A

# SERVICE PROVIDER LICENSE AGREEMENT

between

Pexip Inc.

and

Telesynergy Health Systems, Inc.

31st March 2023

[redacted]

This Service Provider License Agreement (the "**Agreement**") is entered into on 31 March 2023 (the "**Effective Date**") by and between:

(i) Pexip Inc., located at 13461 Sunrise Valley Dr. Suite 130. Herndon, VA 20171, USA ("**Pexip**")

and

(ii) [**Telesynergy Health Systems, Inc.**, ("**Licensee**")

Pexip and the Licensee will in the Agreement be individually referred to as "**Party**", and collectively as "**Parties**".

Capitalised terms have the meaning assigned to them in the paragraph in which they are written in bold between quotation marks.

## 1 BACKGROUND

Pexip is a developer and supplier of Pexip Infinity (the "**Software**") conferencing and collaboration software which can be deployed on industry-standard server and virtualization platforms.

Pexip shall grant to the Licensee the right to use the Software according to the provisions of the Agreement.

The Licensee has the right to be a Pexip Service Provider for the term of the Agreement.

This Agreement supersedes any agreements, arrangements, rights or obligations existing or made between the Parties prior to this Agreement.

### 1.1 Documentation

Pexip shall give the Licensee access to relevant documentation and guidelines related to the Software.

Access to documentation will be provided simultaneously with the Software. The documentation is intended to be compliant with the latest Software version available.

### 1.2 Additional Services

Pexip may upon agreement with the Licensee, on a case-by-case basis, provide additional services (e.g., installation and training) on a consultancy basis. Such work is not governed by this Agreement (unless explicitly specified in the following terms) and shall be subject to a separate agreement between the Licensee and Pexip.

### 1.3 Territory

See Appendix "Term Sheet".

**For SILVER Tier Service Providers: Direct sales only**

The Licensee is permitted to sell their services directly to customers. The Licensee is not permitted to sell through a two-tier sales model, where the Licensee is the First-tier Service Provider and the customer is the Second-tier Service Provider and where the Second-tier Service Provider offers hosted services to customers.

**For GOLD Tier Service Providers only: Two-Tier Services**

[redacted]

The Licensee is permitted to sell their services directly and through a two-tier sales model within the Territory. In the two-tier case, the Licensee is the First-tier Service Provider, and the Licensee's customer is the Second-tier Service Provider. The Second-tier Service Provider may only offer hosted services to end user customers within the Territory. All Second-tier Service Providers must be approved in writing by Pexip, approval shall not be unreasonably withheld. The fee per Second-tier Service Provider is outlined in CLAUSE 3.2.

## 2 LICENSE GRANT

Pexip grants to the Licensee for the term of this Agreement a limited, non-exclusive, non-transferable license to download the Software and to apply the Software in accordance with this Agreement.

The Licensee shall not, unless explicitly set out in the Agreement, without the prior written consent of Pexip:

a) modify, adapt, translate or otherwise alter the Software;
b) tamper with, harm, reverse engineer, decompile, disassemble or otherwise attempt to extract information from the Software;
c) disclose, distribute, resell, lease, loan, sub-license, assign or allow any type of unauthorized third-party user or access to the Software;
d) patch, update or modify the software, unless directed to do so by Pexip;
e) make copies, other than reasonably required for backup or archiving purposes and in accordance with the provisions of this Agreement, or sell or distribute such copies of the Software;
f) disclose to any third party the results of any Software performance benchmarks or any specific detailed comparisons between the Software and any Licensee or third-party product;
g) use any isolated component and / or reverse engineered functionality of the Software to augment or replace functionality in a third-party software product or as an add-in to any third-party software product; or
h) substantially duplicate the Software capabilities.

## 3 PAYMENT

### 3.1 General

All invoices fall due Ninety (90) days after invoice date.

Late payments shall accrue interest at the rate according to applicable law and the Licensee shall reimburse Pexip for all costs of collection incurred, including reasonable attorney's fees and expenses.

### 3.2 Fixed License Fee

See Appendix "Term Sheet"

### 3.3 Additional License Fee

The following are other fees that may apply during the term of the Agreement:

See Appendix "Term Sheet"

[redacted]

### 3.4 Price Adjustments

Pexip may change any fees and/or pricing models in discussion and agreement with **Telesynergy Health Systems, Inc** with ninety (90) days' written notice to the Licensee, provided that any increase with effect for the Licensee may only be enforced after the end of the Initial Term or any Renewal Period. Any open quotes or other outstanding business that close after a price change notification will automatically go into effect at the start of the next Renewal Period.

## 4 INTELLECTUAL PROPERTY RIGHTS

Intellectual property rights ("**IPR**") shall include inventions (patentable or not), copyrights, design, trademarks, technical specifications, database rights, technical specifications, source codes and object codes of software programs and parts thereof, trade secrets and other documentation related thereto and the know-how and goodwill thereto.

The Agreement does not transfer any IPR between the Parties. Pexip reserves all rights, title and interest in the Software and any updates, modifications, improvements and derivatives thereof.

The Licensee shall be entitled to use Pexip's IPR only for the purpose and to the extent strictly required to perform their tasks, rights and obligations under this Agreement.

## 5 INFRINGEMENT OF IPR

In the event a claim, demand, suit or action alleging infringement of the IPR, is brought against Pexip or the Licensee from a third party, or Pexip believes one may be brought against one of them, Pexip has the right to at its sole discretion either:

(i) at its own expense modify its technology or documentations or related elements to avoid the alleged infringement; or

(ii) obtain for the Licensee the rights required to continue to use the allegedly infringing part of the Software; or

The Licensee shall, in relation to a claim as set out above:

a) promptly and not later than twenty (20) days after receiving notice notify Pexip of any such claim of which the Licensee becomes aware;

b) allow Pexip to direct the defense or settlement or any other action taken;

c) give Pexip all such information and assistance as Pexip may reasonably require; and

d) not settle any such claim or suit related to such claims without Pexip's consent.

e) Pexip will indemnify and hold harmless Licensee for any infringement claims that apply directly and only to Pexip's Software.

Beyond what is expressly stated in Clause 5, the Licensee may not otherwise hold Pexip liable for infringement.

[redacted]

## 6 CONFIDENTIALITY

Each Party shall not disclose Confidential Information to any third party or use it for any other purpose than what is strictly necessary to exercise its rights and obligations under the Agreement, without the other Party's consent.

Confidential information ("**Confidential Information**") means all information obtained by the Parties in relation to the performance of the Agreement. This includes, but is not limited to secret or confidential commercial, financial, marketing, technical or other information, know-how, trade secrets and other information in any form or medium whether disclosed orally or in writing before or after the date of this Agreement, together with any reproductions of such information in any form or medium or any part(s) of such information.

A Party shall ensure that confidentiality as set forth above is observed by obtaining confidentiality understandings or other appropriate measures from its employees, directors, sub-contractors, consultants and others that get access to Confidential Information.

The confidentiality obligation does not include such information that a Party has obtained by other means, or which is in the public domain other than by a breach of the Agreement. The confidentiality obligation does not apply when a Party has a statutory requirement to disclose the information, and if the information is subsequently disclosed only to the prescribed authority defined within the statute.

The confidentiality obligation shall survive any termination of this Agreement for twenty-four (24) months. Employees, officers, consultants and other personnel who terminate their relationship with one of the Parties shall be obliged to maintain the same duty of confidentiality after termination of its relations with such Party

## 7 BREACH OF THE AGREEMENT

### 7.1 General

A Party is in breach of the Agreement if it fails to perform any of its obligations under this Agreement, including defective, partial or late performance.

Notice of defect or other breach of the Agreement must be submitted in writing without undue delay after the issue giving cause to such notice was discovered or should have been discovered.

### 7.2 Obligation to remedy

A Party in breach of its obligations according to the Agreement shall, to the extent such breach is capable of remedy, use its reasonable efforts to remedy the breach without undue delay.

Pexip shall use reasonable efforts to rectify the errors or redeliver the Software in case of defects, deviations or errors in the Software. Pexip warrants that the software functions according to its intended purpose. If the Software does not function according to its intended purpose, then Licensee will be granted a refund of any fees paid for non-functioning software in the previous twelve (12) month period.

### 7.3 Termination for material breach

A Party has the right to terminate this Agreement with immediate effect if the other Party is in material breach of its obligations, and the affected Party has sent a written notice stating that the Agreement will be terminated

[redacted]

if the breach is not remedied within thirty (30) days or such additional time that is deemed reasonably required to remedy the breach in question.

Regardless of the above, any violation of the limitations or any breach of the Licensee's obligations set forth in Clauses 1.3 and 2 will always constitute a material breach. In the event that Pexip terminates the Agreement due to a material breach by the Licensee, the Licensee is not entitled to repayment of any payments made to Pexip by the Licensee.

**Limitation of liability**

Neither Party shall be liable for the other Party's indirect loss or damage of any kind including, without limitation, any exemplary, punitive, consequential losses or loss of profit, loss of data or goodwill. Pexip shall under no circumstances be liable for any loss incurred by the Licensee due to failure of transmission, such as but not limited to, blank screens or unsatisfactory transmissions.

In all events, the maximum total aggregate liability of either Party in respect of any claim by or loss incurred by the other Party due to that Party's breach of the Agreement or any claims related or referring to the licenses or IPR, regardless of the basis or theory of such claim or loss, shall not exceed the greater of twelve (12) months' fees paid by the Licensee to Pexip pursuant to this Agreement or the amount of fifty thousand US dollars ($50,000.00).

The limitations of liability shall not apply if the Party in question has acted wilfully or with gross negligence.

## 8 TERM AND TERMINATION

### 8.1 Term

The Agreement shall be in full force from Effective Date and for a period set forth in the relevant order confirmation issued by Pexip, or for a period of two (2) years if no such period is stated in the relevant order confirmation (the "**Initial Term**"). The Agreement shall renew automatically thereafter for additional twelve (12) month periods (each a "**Renewal Period**") under the same terms and conditions unless either Party gives the other Party Ninety (90) days' written notice prior to the expiration of the Initial Term or any Renewal Term.

### 8.2 Immediate termination

Either Party has the right upon written notice to terminate the Agreement with immediate effect:

(i) if the other Party becomes insolvent or is unable to pay its debts as they fall due or goes into liquidation either voluntary of as required by law;
(ii) if the other Party is in material breach according to Clause 7.3; or
(iii) if the Party suffers under the circumstances described in Clause 12 (Force Majeure).

## 9 DISCHARGE OF THE AGREEMENT

On and from the notification date of termination according to Clause 9.1, the Parties shall enter a "**Wind Down Period**" where the Parties' activities are wound down in a professional and diligent manner to ensure, among other things, that the Licensee's customers are properly serviced.

[redacted]

The Wind Down Period shall expire at the termination date of the Licensee's existing customer agreements where use of the Software is necessary to fulfil the Licensee's obligation according to such customer agreements.

During the Wind Down Period, each Party will continue to observe and perform its rights and obligations under this Agreement contingent upon that the Licensee shall:

a) not pursue or conclude any customer agreements which involve the use of Software or any services delivered by Pexip to the Licensee;
b) pay license fees for those licenses remaining in use;
c) provide Pexip with a list of the Licensee's customer agreements (with information such as customer name, term and expiration), which involve the use of Software or any services delivered by Pexip to the Licensee; and
d) terminate for convenience at its discretion and without any cancellation fees to be incurred by the Licensee, any existing customer agreements which involve the use Software or any services delivered by Pexip to the Licensee.

Upon the expiration of the Wind Down Period:

(i) The Licensee's right and its customers' right to use the Software shall cease;
(ii) The Licensee and its customers shall terminate the use of the Software;
(iii) The Licensee shall return the documentations and Software to Pexip or, at Pexip's option, destroy the documentation and Software, and if requested, provide Pexip with an affidavit confirming such destruction;
(iv) Pexip will terminate any notifications and updates related to the Software; and
(v) Licensee shall pay all accumulated outstanding fees to Pexip.

The Licensee is not entitled to any compensation, including any paid fees or other disbursements or investments related to this Agreement.

## 10 ASSIGNMENT

The Parties may only assign their respective rights and obligations under the Agreement with the written consent of the other Party. Consent shall not be unreasonably withheld. Approval is not necessary if the Agreement is in whole transferred as a consequence of that Pexip merges, demerges, or otherwise is re-organizing.

Pexip is free to use factoring of trade receivables.

## 11 FORCE MAJEURE

Neither Party shall be liable to the other Party for any loss or any failure or delay to perform any obligation under this Agreement which is due to causes beyond its reasonable control (including, without limitation, acts of God, industrial disputes, protests, fire, flood, storm, epidemic, compliance with any law or governmental order, regulation or rule, explosion, breakdown of plant or machinery, act of terrorism, war, national emergency, military operations or acts of government and situations where the delivery of the Software is prohibited or delayed by local laws, regulators, government bodies or agencies).

[redacted]

Any excuse for non-performance shall last only as long as the event remains beyond the reasonable control of the non-performing Party. The non-performing Party will use its best effort to minimize the impacts caused by any such event beyond its reasonable control.

Should such circumstances continue for more than sixty (60) days, either Party may terminate the Agreement in accordance with Clause 8.2.

## 12 GOVERNING LAW AND DISPUTE RESOLUTION

Any disputes under this Agreement shall be negotiated in good faith. If a dispute is not resolved through negotiations, each Party may require such dispute to be resolved with final effect by the ordinary courts.

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to choice of law rules. The parties hereby consent to the exclusive jurisdiction of, and venue in, any federal or state court of competent jurisdiction located in New York County, New York, for the purposes of adjudicating any matter arising from or in connection with this Agreement.

## 13 SCOPE OF DELIVERY

### 13.1 The Software

The "**Software**" is a multi-party voice, video, and data conferencing system which runs on industry-standard servers. The Software is distributed as an OVA (Open Virtualization Archive) file to the Licensee. The Software consists of two main parts:

(i) Management Node
(ii) Conferencing Node

A complete system installation consists of one (1) Management Node and at least one (1) Conferencing Node. The Software shall have the characteristics and functionality as set out in the relevant documentation provided by Pexip. Pexip will use reasonable effort to further develop the Software, and the Software may be modified by Pexip from time to time.

The Licensee may deploy the Software in any or all of three modalities:

**Primary Production Deployment ("Primary Deployment")**

The Licensee is entitled to one (1) full deployment of the Software, to act as a complete service offering in and of itself, or as an added enhancement to an existing service offering. The Primary Deployment shall consist of:

1. The Primary Management Node: A single Management Node virtual machine, owned by, managed by and operated by the Licensee. It may not be installed on the premises or in the data centers of any of the Licensee's customers.

2. The Primary Conferencing Nodes: Any number of Conferencing Node virtual machines configured by and managed by the Primary Management Node. There are no restrictions on where the Primary Conferencing Nodes may be deployed, as long as they remain under configuration and management of the Primary Management Node.

[redacted]

The Primary Deployment shall be used to provide services to one or more customers of the Licensee.

The licenses enabling the Primary Deployment will be contained in one (1) license key, hosted by the Primary Management Node. If additional licenses are purchased by the Licensee to increase concurrent call capacity on the Primary Deployment, the Licensee shall return their license key to Pexip – a new key will then be issued to the Licensee that contains the required increased capacity. The license key for the Primary Deployment will not be divided to provide licenses for other Management Nodes.

**Secondary Production Deployments ("Secondary Deployments")**

The Licensee may build Secondary Deployments of the Software for specialized applications. Examples of specialized applications include (but are not limited to):

- Integration of the Software with existing service offerings
- Dedication of a Secondary Deployment for usage by a single customer

A Secondary Deployment shall consist of:

1. Secondary Management Node: A single Management Node virtual machine, owned by, managed by and operated by the Licensee only. There are no restrictions on where the Secondary Management node is deployed.

2. Secondary Conferencing Nodes: Any number of Conferencing Node virtual machines that are configured by and managed by the Secondary Management Node. There are no restrictions on where the Secondary Conferencing Nodes may be deployed, as long as they remain under configuration and management of the Secondary Management Node.

Secondary Deployment Management Nodes must be purchased per the pricing schedule in Clause 3 of the Agreement.

The licenses enabling a Secondary Deployment will be contained in one (1) license key, hosted by the Secondary Management Node. If additional licenses are purchased by the Licensee to increase concurrent call capacity on any Secondary Deployment, the Licensee shall return their license key to Pexip – a new key will then be issued to the Licensee that contains the required increased capacity. The license key for any Secondary Deployment will not be divided to provide licenses for other Management Nodes.

[redacted]

**Quality Assurance and Development Deployment ("Lab Deployment")**

The Licensee is entitled to one (1) full deployment of the Software for development and/or testing ("Lab Deployment"). The Lab Deployment is for internal use by the Licensee only, and may not be accessed by the Licensee's customers or partners. The Lab Deployment shall consist of:

1. Lab Management Node: A single Management Node virtual machine, managed by and operated by the Licensee only. It may not be installed on the premises of or in the data centers of any of the Licensee's customers or partners.

2. Lab Conferencing Nodes: Any number of Conferencing Node virtual machines that are configured by and managed by the Lab Management Node. Lab Conferencing Nodes may not be installed on the premises of or in the data centers of any of the Licensee's customers or partners.

As a Gold or Silver Service Provider partner of Pexip, the Licensee will be provided with Concurrent Video Call Licenses to be utilized with the Lab Deployment. The Licensee will also be provided with Concurrent Voice-only Call Licenses to be utilized with the Lab Deployment.

If the Licensee would like to deploy any additional Lab Deployments, a Lab Management Node(s) and Lab Licenses must be purchased per the pricing schedule in Appendix "Term Sheet".

**13.2 Availability of the Software**

The Software will be made available on a website for downloading by the Licensee from the Effective Date.

Downloading and installation of the Software shall be done by the Licensee or its Pexip Certified Partner in accordance with Pexip's guidelines and/or instructions.

31st March 2023 [date]

| Pexip | Telesynnergy Health Systems, Inc |
| --- | --- |
| Name: Jordan Owens | Name: Anil Srivastava |
| Title: CTO, Americas | Title: Director |

| | | |
|---|---|---|
| Additional Audio-only port Capacity for Secondary Deployments | Cost of audio-only port capacity for any Secondary Deployments | Included in Enterprise Agrrement. License will be provided as needed and negotiated for the next year's renewal. |
| | | |

Date: 3/31/23

Pexip

Name: Jordan Owens

Title: CTO, Americas

Telesynnergy Health Systyems, Inc.

Name Anil Srivastava

Title Director

## APPENDIX: Notifications / Key Partner Personnel

Please fill in the table below with the contact information of the individual(s) responsible for each item. These individual(s) will be contacted by Pexip when there are updates and/or information needed related to the item listed.

| Item | Partner Contact Name | Partner Contact Phone | Partner Contact Email |
|---|---|---|---|
| [redacted] | | | |

## APPENDIX: TERM SHEET

| GOld | Reference The Agreement section 1.3 | Gold |
|---|---|---|
| Territory | Reference The Agreement section 1.3 | Global<br>*Telesynergy* will build their own platform/service/product with the Pexip Software as an integrated element of the *Telesynergy* Health Care Solution and sell it to their own customers using the *Telesynergy* name. |
| Initial Term | Renewals according to The Agreement section 9.1.<br>Termination according to The Agreement sections 7 and 9. | One year |
| Annual Gold Service Provider Fee | Includes license for an Enterprise License agreement for up to five management nodes with unlimited users and 500 active calls per management node with Microsoft Teams and Google interop. Includes additional 120 Hours of Professional Services to assist with initial design for primary deployment and installation. Pexip API integrations as per Pexip's SLA offering as well as new customer additions.<br>Includes license for a single "Lab Deployment" with 20 video ports, unlimited VMRs and Scheduling license and Microsoft teams and Google Interop, ref The Agreement section 14.1 | |
| | | |
| Additional Video Port Capacity for Primary Deployment for Silver Service Providers | Cost of additional video port capacity for additional Deployment or expansion of primary deployment. | Included in Enterprise Agrrement. License will be provided as needed and negotiated for the next year's renewal. |
| Additional Audio Port Capacity for Primary Deployment | Cost of additional video port capacity for the Primary Deployment | Included in Enterprise Agrrement. License will be provided as needed and negotiated for the next year's renewal. |
| Secondary Deployments | Reference The Agreement, section 14.1 | Included in Enterprise Agrrement. License will be provided as needed and negotiated for the next year's renewal. |
| Additional Video Port Capacity for Secondary Deployments | Cost of video port capacity for any Secondary Deployments | Included in Enterprise Agrrement. License will be provided as needed and negotiated for the next year's renewal. |